IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT A. HAUSE, | : | |
|     Plaintiff | : | No. 1:17-cv-2234 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| CITY OF SUNBURY and DAVID PERSING, | : | |
| | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are Defendants City of Sunbury ("Defendant Sunbury") and David Persing ("Defendant Persing")'s motion to dismiss Plaintiff Scott A. Hause ("Plaintiff")'s complaint (Doc. No. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8), and Defendants' motion to take judicial notice (Doc. No. 7).[1] For the reasons provided herein, the Court will deny Defendants' motion to take judicial notice and grant Defendants' motion to dismiss.

### I. BACKGROUND

#### A. Factual Background[2]

The instant dispute arises out of alleged age discrimination and interference with Plaintiff's First Amendment right to freedom of association by Defendants. (Doc. No. 1 ¶¶ 13, 29.) Plaintiff is a former law enforcement officer with Defendant Sunbury's police department.

---

[1] The Court refers to Defendant Sunbury and Defendant Persing together as "Defendants" herein.
[2] With the exception of the information related to an arbitration opinion and award between the parties below, the following background is taken from Plaintiff's complaint. (Doc. No. 1.) The allegations set forth in the complaint are accepted as true for the purpose of the instant motion to dismiss. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a 12(b)(6) dismissal, [the Court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

(Id. ¶ 6.) Plaintiff alleges that his employment with Defendant Sunbury was terminated on September 1, 2016 because of his age.[3] (Id. ¶ 10.) Plaintiff further alleges that Defendant Sunbury "engaged in a course of conduct designed to intimidate all of its law enforcement officers over the age of 40" in order to "effect the severance of all law enforcement officers from employment" with Defendant Sunbury. (Id. ¶ 7-8.) According to Plaintiff, after Defendant Sunbury terminated him, it replaced Plaintiff with part-time personnel who were younger than 40 years old. (Id. ¶ 12.)

Plaintiff avers that in January 2014, he was elected president of the Sunbury Police Officers Association (the "SPOA"), a collective bargaining unit that represents law enforcement officers employed by Defendant Sunbury, and served as its president until he was terminated in 2016. (Id. ¶¶ 17, 18.) In his role as president of the SPOA, Plaintiff was responsible for negotiating a collective bargaining agreement ("CBA") with Defendant Sunbury. (Id. ¶ 19.) In 2013, the SPOA and Defendant Sunbury agreed to a CBA under which officers with service of twenty or more years would receive certain longevity bonuses and other benefits. (Id. ¶ 20.)

In 2015, the SPOA and Defendant Sunbury began negotiating a new CBA. (Id. ¶ 22.) Defendant Persing, as mayor of Sunbury, Pennsylvania, negotiated on behalf of Defendant Sunbury, and during the negotiations, he and other representatives of Defendant Sunbury expressed their desire to eliminate the longevity bonuses and other benefits that had been

---

[3] In connection with Defendants' motion to dismiss (Doc. No. 8), Defendants filed a motion to take judicial notice (Doc. No. 7), in which Defendants move for the Court to take judicial notice of an arbitration opinion and award (id. at 4). This arbitration opinion and award, attached as an exhibit to the pending motions, indicates that Defendant Sunbury and the Sunbury Police Officers Association participated in an arbitration related to Plaintiff's termination on February 2, 2017, and that an opinion and award was issued on April 21, 2017. (Doc. No. 8-3.) The Court will not address the substance of this arbitration opinion and award for the reasons discussed herein.

included in the previous CBA. (Id. ¶ 23.) [4] According to Plaintiff, Defendant Persing complained publicly that the longevity bonuses and other benefits were too costly and were putting Defendant Sunbury in financial jeopardy. (Id. ¶ 24.) Plaintiff states that the SPOA opposed the elimination of the longevity bonuses and other benefits. (Id. ¶ 25.) The SPOA and Defendant Sunbury proceeded to binding arbitration to resolve their impasse as to the longevity bonuses and other benefits, and an arbitration hearing took place before a private arbitrator on June 1, 2016. (Id. ¶ 26.) Plaintiff avers that an arbitration award that retained the longevity bonuses and other benefits was issued on December 22, 2016. (Id.)

According to Plaintiff, prior to the June 1, 2016 arbitration hearing, Defendants "embarked on a policy and course of conduct to terminate, harass and intimidate every bargaining unit member over the age of 40." (Id. ¶ 27.) Subsequently, Plaintiff was terminated on September 1, 2016. (Id. ¶ 10.) Plaintiff alleges that Defendants retaliated against Plaintiff for his association with the SPOA and that Defendants interfered with Plaintiff's exercise of his First Amendment right to freedom of association as a member of the SPOA. (Id. ¶¶ 28-29.) Plaintiff avers that as a result of Defendants' acts, Plaintiff has suffered lost earnings and benefits, humiliation, and emotional distress. (Id. ¶¶ 14, 30.)

### B.  Procedural Background

On December 5, 2017, Plaintiff filed the instant complaint with this Court, alleging one count of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. ("Count I"),[5] and a violation of Plaintiff's First Amendment right to

---

[4] Plaintiff's complaint contains two paragraphs numbered "23." This citation refers to the second paragraph numbered "23."
[5] The Court observes that Count I of Plaintiff's complaint is directed only toward Defendant Sunbury. This practice conforms with Third Circuit precedent stating that the ADEA does not provide for individual liability unless an individual qualifies as a plaintiff's "employer" as

freedom of association ("Count II"). (Id. ¶¶ 13, 29.) On May 31, 2018, Defendants filed a motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8), and a brief in support thereof (Doc. No. 10). Defendants also filed a motion to take judicial notice on May 31, 2018 (Doc. No. 7), and a brief in support thereof (Doc. No. 9). Having been fully briefed (Doc. Nos. 9, 10, 11, 12), the motions are ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

defined by the ADEA. See Holocheck v. Luzerne Cty. Head Start, 385 F. Supp. 2d 491, 496 (M.D. Pa. 2005) (dismissing ADEA claim against manager of business because, inter alia, definitions of "employer" under Title VII and ADEA are virtually identical and the Third Circuit has held that there is no individual liability under Title VII); McDowell v. Axsys Techs. Corp., No. 03-2488, 2005 WL 1229863, at * 4 (D.N.J. May 24, 2005) (stating same and dismissing ADEA claim against supervisor).

4

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, a court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck, 452 F.3d at 260 (citation and quotation marks omitted).

### III. DISCUSSION

As noted above, Count I of Plaintiff's complaint alleges that Defendant Sunbury terminated Plaintiff in violation of the ADEA, and Count II asserts that Defendants violated

5

Plaintiff's First Amendment right to freedom of association in connection with his termination. (Doc. No. 1 ¶ 13, 29.) In moving to dismiss for failure to state a claim upon which relief may be granted, Defendants first assert that the doctrine of collateral estoppel bars Plaintiff's claims because the arbitration opinion and award related to Plaintiff's termination satisfies the four conditions necessary to establish collateral estoppel in Pennsylvania.[6] (Doc. No. 8-1 at 3, 4.) Defendants next argue that Defendant Persing is entitled to qualified immunity as to Plaintiff's claim that Defendants interfered with his First Amendment right to freedom of association. (Doc. No. 8-1 at 8.) In making this argument, Defendants assert that Plaintiff does not allege facts sufficient to show any interference with Plaintiff's First Amendment right to freedom of association. (Id.) Defendants also argue that Plaintiff is not entitled to punitive damages or compensatory damages for pain and suffering, and that arbitration is the proper forum for Plaintiff's claims. (Id. at 9.) The Court will first address Defendants' motion to take judicial notice.

### A. Defendants' Motion to Take Judicial Notice

#### i. Applicable Legal Standard

Federal Rule of Evidence 201(b) permits a district court to take judicial notice of facts that are "not subject to reasonable dispute" in that they are either: (1) "generally known within the territorial jurisdiction of the trial court," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Fed. R. Evid. 201(b). The Third Circuit has held that judicial notice "should be done sparingly at the pleadings stage" and "[o]nly

---

[6] As noted supra, Defendants filed a motion to take judicial notice (Doc. No. 7), in connection with their motion to dismiss (Doc. No. 8). In their motion to take judicial notice, Defendants request that the Court take judicial notice of the arbitration opinion and award related to Plaintiff's termination that was issued on April 21, 2017. (Doc. No. 7 at 1.)

in the clearest of cases." Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007). Judicial notice is improper if a legitimate question exists as to the underlying source of the information. In re Synchronoss Secs. Litig., 705 F. Supp. 2d 367, 390 (D.N.J 2010) (citing Hinton v. Dep't of Justice, 844 F.2d 126 (3d Cir. 1988)); see also Oneida Indian Nation of N.Y. v. State of N.Y., 691 F.2d 1070 (2d Cir. 1982). Rule 201(c)(2) requires, nonetheless, that a district court take judicial notice "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2); see also Gilliam v. Holt, No. 07-359, 2008 Wl 906479, at *3 (M.D. Pa. Mar. 31, 2008) ("Judicial notice is mandatory only where a party requests that it be taken and supplies the necessary information.").

The Third Circuit has held that judicial notice of an arbitration award is appropriate only where, despite failing to attach the arbitration award to its complaint, a plaintiff nonetheless includes references to the arbitration award in its complaint. See Brody v. Hankin, 145 F. App'x 768, 772 (3d Cir. 2005) (holding that the district court impermissibly noticed the existence of an arbitration award because the plaintiff did not rely on the award in the complaint); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that the district court permissibly considered annual report where data contained in the annual report was repeatedly referenced in complaint but was not cited). At the motion to dismiss stage, where a court takes judicial notice of an arbitration award, it may do so only as to the existence of the arbitration award, and not with respect to the truth of the matter asserted in the substance of the award. See Brody, 145 F. App'x at 772-73 (holding that a district court exceeds its mandate and converts a motion to dismiss into a motion for summary judgment when it takes judicial notice of an arbitration award and relies on the content thereof to conduct its res judicata analysis.)

### ii. Arguments of the Parties

Defendants argue that "[w]here the defenses of res judicata or collateral estoppel are raised for adjudication on a motion to dismiss, the Court can take notice of all facts necessary for the decision and then adjudicate that defense." (Doc. No. 7-1 at 3.) Defendants acknowledge that "[a]s relevant to the instant matter, the Third Circuit has expressly noted that a Court may take judicial notice of the existence of an arbitration opinion when deciding a Rule 12(b)(6) motion." (Id. at 4.) Defendants further state that Plaintiff references the arbitration opinion and award in his complaint. (Id.) Defendants also argue that "the Third Circuit has expressly noted that a [c]ourt may take judicial notice of the existence of an arbitration opinion when deciding a Rule 12(b)(6) motion." (Id.) Plaintiff argues that he "made no reference whatsoever in his complaint to the arbitration award" and that he "has not incorporated the arbitration award" into his complaint. (Doc. No. 9 at 3.) Plaintiff states that, as a result, the Court "should decline to take notice of any adjudicative facts contained in the arbitration award." (Id.)

### iii. Whether This Court May Take Judicial Notice of the April 21, 2017 Arbitration Opinion and Award

The Court will decline to take judicial notice of the arbitration opinion and award. In arguing that Third Circuit precedent dictates that the Court can take judicial notice of the existence of an arbitration opinion when deciding a Rule 12(b)(6) motion, Defendants cite to Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410 (3d Cir. 1999), and Spector Gadon & Rosen, P.C. v. Fishman, Nos. 13-2691, 13-5198, 2015 WL 1455692 (E.D. Pa. Mar. 31, 2015). In Southern Cross Overseas Agencies, Inc., in addressing whether a bankruptcy court opinion could be judicially noticed, the Third Circuit held that because the bankruptcy court opinion was a document upon which the plaintiffs relied in making the allegations contained in their complaint, a court could, therefore, "examine the decision to

see if it contradicts the complaint's legal conclusions or factual claims." S. Cross Overseas Agencies, Inc., 181 F.3d at 427. In Spector, the court determined that the plaintiff had incorporated the entirety of an arbitration opinion by reference into his complaint. See Spector, 2015 WL 1455692 at *7. The court held that, as a result, it was appropriate not only to take judicial notice of the arbitration opinion, but also to consider the "factual underpinning" of the arbitration opinion for its bearing on the defendants' motion to dismiss. Id.

Both cases are distinguishable from the facts before the Court here. Despite Defendants' assertion to the contrary (Doc. No. 7-1 at 4), the Court finds no references to the relevant arbitration opinion and award in Plaintiff's complaint. The only reference to an arbitration in Plaintiff's complaint is to a different arbitration award from December 22, 2016 between Defendant Sunbury and the SPOA, wherein the parties addressed the "bargaining impasse" with regard to longevity benefits. (Doc. No. 1 at 4.) Defendants' assertion to the contrary is inaccurate, and as a result, the Court cannot take judicial notice of the opinion and award. See Brody, 145 F. App'x at 772-73 (holding that where a plaintiff does not reference an arbitration in their complaint, a court must decline taking judicial notice of materials related to that arbitration). Accordingly, the Court will deny Defendants' motion to take judicial notice.

### iv. Whether the Doctrine of Collateral Estoppel Bars Plaintiff's Claims

Defendants' motion to take judicial notice is made in connection with their motion to dismiss in that they request that the Court take judicial notice of the arbitration opinion and award and argue in their motion to dismiss that Plaintiff's claims are thus barred by the doctrine of collateral estoppel. (Doc. No. 8-1 at 3.) In making this argument, Defendants state that the arbitration opinion and award satisfies the four-prong test necessary to invoke collateral estoppel. (Doc. No. 8-1 at 4.)

9

"In determining the preclusive effect of a state court judgment," the Court must "apply the rendering state's law of issue preclusion." M & M Stone Co., 368 F. App'x at 161 (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 381 (1985)). Under Pennsylvania law, a party must establish the following before collateral estoppel may be invoked: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. See Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988).

As detailed supra, the Court cannot take judicial notice of the arbitration opinion and award related to Plaintiff's termination. Even if the Court were to take judicial notice of the arbitration opinion and award, however, at the motion to dismiss stage the Court can only take judicial notice of its existence, and not the truth of the matter asserted in the opinion and award. See Brody, 145 F. App'x at 772-73. Therefore, the Court could not analyze the substance of the arbitration opinion and award for the purpose of conducting a collateral estoppel analysis. See id. (holding that a district court exceeds its mandate and converts a motion to dismiss into a motion for summary judgment when it takes judicial notice of an arbitration award and relies on the content thereof to conduct its res judicata analysis); see also Kelly v. MBNA Am. Bank, No. 06-228, 2007 WL 1830892, at * 4 (D. Del. June 25, 2007) (stating that "it would be improper" for the court to grant dismissal on the basis of res judicata where the plaintiff did not mention or attach documents referencing an arbitration award to his complaint); Kisby Lees Mech. LLC v. Pinnacle Insulation, Inc., No. 11-5093, 2012 WL 3133681, at * 4 (D.N.J. July 31, 2012) (applying similar principles and holding that the court could not undertake a res judicata analysis

as to a counterclaim because the facts relevant to such an analysis were not apparent on the face of the counterclaim). Accordingly, the Court will not evaluate whether Plaintiff's claims are barred by the doctrine of collateral estoppel. The Court will next consider Count I of Plaintiff's complaint.

### B. Count I – Age Discrimination in Violation of the ADEA

In support of their motion to dismiss for failure to state a claim pursuant to Federal Civil Procedure Rule 12(b)(6), Defendants raise several arguments. Defendants devote significant portions of their brief to arguments related to collateral estoppel and qualified immunity, but do not substantively address the factual sufficiency of the allegations contained in Count I of Plaintiff's complaint. As a threshold matter, however, having determined supra that the Court will not undertake any res judicata analysis at this stage, the Court will evaluate the sufficiency of Count I of Plaintiff's complaint. See Santiago, 629 F.3d at 130 (holding that a district court must take the following steps when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief").

#### i. Applicable Legal Standard

The ADEA prohibits discrimination by employers on the basis of age. See 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination under the ADEA, Plaintiff must sufficiently allege that (1) he was over forty years old at the time he was discharged; (2) he was qualified for the position from which he was terminated and his performance in said position was satisfactory; (3) he suffered an adverse employment action; and (4) his replacement was

sufficiently younger to permit a reasonable inference of age discrimination. See Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).

A plaintiff alleging employment discrimination, however, is "not required to plead facts to establish a prima facie case under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Lucchesi v. Day & Zimmerman Grp., Civil Action No. 10-4164, 2011 WL 1540385, at *4 (E.D. Pa. Apr. 21, 2011) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)). In the context of an employment discrimination claim, a plaintiff's complaint must meet only "the simple requirements of Rule 8(a)." Swierkiewicz, 534 U.S. at 513. As a result, to survive a motion to dismiss in an employment discrimination context, a complaint must present factual allegations that would "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the prima facie case. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### ii. Whether Plaintiff Has Stated a Claim Under the ADEA

Plaintiff's complaint includes the following allegations in support of his discrimination claim brought under the ADEA:

> [Defendant Sunbury] has engaged in a course of conduct designed to intimidate all of its law enforcement officers over the age of 40.
>
> The purpose of [Defendant Sunbury's] course of conduct designed to intimidate all of its law enforcement officers over the age of 40 is to effect the severance of all law enforcement officers from employment with [Defendant Sunbury].
>
> [Defendant Sunbury] has created and continues to create a hostile work environment for law enforcement officers over the age of 40.
>
> On September 1, 2016, [Defendant Sunbury] terminated [Plaintiff's] employment as a law enforcement officer.

> [Defendant Sunbury] terminated [Plaintiff's] employment as a law enforcement officer based on [Plaintiff's age].
>
> [Defendant Sunbury] replaced [Plaintiff] by hiring part-time personnel under the age of 40.
>
> The conduct of [Defendant Sunbury] in creating a hostile work environment based on age and terminating [Plaintiff] based on his age violates the [ADEA].
>
> As a direct and proximate result of [Defendant Sunbury's] acts, [Plaintiff] has suffered lost earnings and benefits, humiliation and emotional distress.

(Doc. No. 1 ¶¶ 7-14.)

Plaintiff's complaint does not allege facts sufficient to state a claim of discrimination under the ADEA. While not expressly alleged in Plaintiff's complaint, given the allegations throughout Plaintiff's complaint, the Court determines that it is reasonable to infer that Plaintiff is at least forty years old, the first element of an ADEA discrimination claim. Plaintiff fails to allege sufficient factual matter, however, to establish the second and fourth elements of an ADEA discrimination claim.

The second element of an ADEA discrimination claim is that the plaintiff was qualified for the position and that the plaintiff's performance in that position was satisfactory. See Hill, 455 F.3d at 247. Plaintiff's complaint does not contain any allegations related to his qualifications for the position of law enforcement officer. Similarly, Plaintiff's complaint contains no allegations related to his performance as a law enforcement officer. To state a claim for discrimination under the ADEA, Plaintiff must allege sufficient factual matter that would "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the prima facie case. Phillips, 515 F.3d at 234. Further, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Assoc. Gen. Contractors, 459 U.S. at 526. Because Plaintiff has not alleged any facts to establish the second element of a

discrimination claim under the ADEA, the Court cannot assume that Plaintiff can prove that he was qualified for the position he held or that his performance in that position was satisfactory at the time of his termination. As a result, the allegations in Plaintiff's complaint do not support a reasonable inference that that he was qualified for the position he held at the time of his termination and that his performance was satisfactory.

The fourth element of an ADEA discrimination claim requires that a plaintiff allege that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. See Hill, 455 F.3d at 247. While Plaintiff does assert that Defendant Sunbury replaced Plaintiff "by hiring part-time personnel under the age of 40" (Doc. No. 1 ¶ 12), Plaintiff does not allege anything further or provide any additional factual matter to support to this assertion. Courts presented with similarly bare allegations have held them to be insufficient to state a claim for relief under the ADEA. See Sangi v. Warren Hosp., No. 10-4571, 2011 WL 4857933, at *3 (D.N.J. Oct. 11, 2011) (holding that where plaintiff alleged that she believed she had been replaced by someone "younger than she" did not reasonably permit an inference of discrimination on the basis of age); Foster v. Humane Soc. of Rochester & Monroe Cty., Inc., 724 F. Supp. 2d 382 at 391 (W.D.N.Y. 2010) (holding that plaintiff's allegation that she was "replaced by a woman in her early thirties" was insufficient to state a claim for relief under the ADEA); Mandengue v. ADT Sec. Sys., Inc., No. 09-3103, 2010 WL 2365463, at *5 (D. Md. June 4, 2010) (plaintiff's assertion that she was replaced by a "significantly younger employee" was insufficient to state a claim for relief); Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) ("Although Liburd alleges that she was replaced by a younger employee, this, without more, is not enough to survive a motion to dismiss.").

14

The Court concludes that Plaintiff fails to allege sufficient factual matter to establish that Defendant Sunbury replaced Plaintiff with an employee sufficiently younger to permit a reasonable inference of age discrimination. Accordingly, the Court will grant Defendants' motion as to Count I of Plaintiff's complaint. The Court now turns to Count II of Plaintiff's complaint.

### C. Count II – Interference with Plaintiff's First Amendment Freedom of Association

#### i. Applicable Legal Standard

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984). That associational right derives from an underlying individual right to engage in a constitutionally protected activity. Id. ("The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."). The Supreme Court has held that the Free Speech Clause gives rise to an attendant right to associate for the purpose of engaging in collective expression. See Boy Scouts of Am. v. Dale, 530 U.S. 640, 661 (2000).

With regard to this right to associate, the Supreme Court has recognized two forms of protected relationships: "those involving expressive association and those involving intimate association." A.B. v. Montgomery Area Sch. Dist., No. 4:10-cv-484, 2012 WL 3288113, at *4 (M.D. Pa. Aug. 10, 2012) (citing Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 442 (3d Cir. 2000)). "The expressive association analysis queries whether the group engaged in expressive activities, whether state action significantly affects ability to advocate viewpoint, and whether state's interest outweighs burden imposed." Id. (citing Pi Lambda Phi,

15

229 F.3d at 442). "Intimate association, on the other hand, is generally characterized by 'relative smallness [of the group], a high degree of selectivity in decisions to begin and maintain the affiliation and seclusion from others.'" Id. (citing Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3d Cir. 1988)).

> ii. **Whether Plaintiff's Complaint States a Claim for Interference with Plaintiff's First Amendment Right to Freedom of Association**

Plaintiff's complaint lacks sufficient factual matter to support a reasonable inference that Defendants violated Plaintiff's First Amendment right to freedom of association. Count II of Plaintiff's complaint contains the following conclusory allegations:

> Subsequent to the June 1, 2016 arbitration hearing, [Defendants] embarked on a policy and course of conduct to terminate, harass[,] and intimidate every bargaining unit member over the age of [forty], including [Plaintiff], entitled to receive longevity, DROP program[,] and other benefits related to time in service.
>
> [Defendants] have retaliated against [Plaintiff] for his association with the SPOA.
>
> [Defendants] have interfered with [Plaintiff's] exercises of his rights as a member of the SPOA in violation of the association clause of the First Amendment to the Constitution of the United States.
>
> As a direct and proximate result of [Defendants'] acts, [Plaintiff] has suffered lost earning and benefits, humiliation and emotional distress.

(Doc. No. 1 ¶¶ 27-30.)

Plaintiff's complaint does not contain sufficient factual matter to support a reasonable inference that Defendants violated his right to freedom of association. As an initial matter, Plaintiff's complaint does not indicate what "protected relationship" with which Defendants are alleged to have interfered. The Court will assume, based on the fact that the SPOA is a collective bargaining unit, that Plaintiff's claim relates to his right to "expressive association," which association right is "for the purpose of engaging in those activities protected by the First Amendment." Roberts, 468 U.S. at 617-18.

16

Plaintiff's complaint, however, lacks sufficient factual matter necessary to permit an inference that his expressive association rights were interfered with by Defendants. For example, Plaintiff's complaint contains no allegations that inform the Court as to how Defendants retaliated against Plaintiff, what specific acts Defendant engaged in to harass and intimidate Plaintiff, or any other details related to how Defendants interfered with Plaintiff's First Amendment right to expressive association. To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" by including facts which "permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 678-79. Plaintiff does not allege sufficient factual matter in his complaint to show that his claim is facially plausible. Accordingly, the Court will grant Defendants' motion to dismiss as to Count II of Plaintiff's complaint.

Given that Plaintiff has failed to state a claim in both Count I and Count II of his complaint, the Court will not take up the remaining substantive arguments Defendants put forward in support of their motion to dismiss.[7] In civil rights cases, a district court must generally sua sponte extend to a plaintiff an opportunity to amend his complaint before dismissal. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). Accordingly, the Court will grant Plaintiff leave to amend his complaint in an effort to correct the pleading deficiencies identified in this Memorandum.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to take judicial notice (Doc. No. 7), and grant Defendant's motion to dismiss (Doc. No. 8), and dismiss both of

---

[7] Defendants argue that: (1) Defendant Persing is entitled to qualified immunity (Doc. No. 8-1 at 7-9); (2) Plaintiff is not entitled to punitive damages or compensatory damages for pain and suffering (id. at 9, 10); and (3) arbitration is the proper forum for Plaintiff's claims (id. at 10-12).

17

Plaintiff's claims without prejudice. The Court will grant Plaintiff leave to amend his complaint.

An Order consistent with this Memorandum follows.