IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT A. HAUSE, | : | |
|     Plaintiff | : | No. 4:17-cv-02234 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| CITY OF SUNBURY and DAVID PERSING, | : | |
| | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court are Defendants City of Sunbury, Pennsylvania ("Defendant Sunbury") and David Persing ("Defendant Persing")'s motion to dismiss Plaintiff Scott A. Hause ("Plaintiff")'s first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 15), or, in the alternative, to compel arbitration (Doc. No. 16), and Defendants' motion to take judicial notice (Doc. No. 17).[1] For the reasons provided herein, the Court will deny Defendants' motion to take judicial notice and grant Defendants' motion to dismiss.

## I. BACKGROUND

### A. Procedural Background

On December 5, 2017, Plaintiff initiated the above-captioned action by filing a complaint with this Court, alleging one count of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. ("Count I"), and a violation of Plaintiff's First Amendment right to freedom of association ("Count II"). (Doc. No. 1 ¶¶ 13, 29.) On May 31, 2018, Defendants filed a motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8), and a brief in support thereof (Doc. No. 10). Defendants also filed a motion to take judicial notice on May 31, 2018 (Doc. No. 7), and a brief

---

[1] The Court refers to Defendant Sunbury and Defendant Persing together as "Defendants" herein.

in support thereof (Doc. No. 9). The Court issued a Memorandum (Doc. No. 13) and Order (Doc. No. 14) on March 31, 2019 denying Defendants' motion to take judicial notice and granting Defendants' motion to dismiss without prejudice to Plaintiff's right to file an amended complaint. Plaintiff then filed an amended complaint on April 30, 2019. (Doc. No. 15.) Defendants subsequently filed the instant motion to dismiss Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 16) and a renewed motion to take judicial notice (Doc. No. 17). Having been fully briefed (Doc. Nos. 16, 17, 19, 20), the motions are ripe for disposition.

### B. Factual Background[2]

Plaintiff is a former law enforcement officer with Defendant Sunbury's police department. (Doc. No. 15 ¶ 6.) Plaintiff alleges that his employment with Defendant Sunbury was terminated on September 1, 2016 because of his age.[3] (Id. ¶¶ 12-13.) Plaintiff further alleges that Defendant Sunbury "engaged in a course of conduct designed to intimidate all of its law enforcement officers over the age of 40" for the purpose of "effect[ing] the severance of all law enforcement officers from employment" with Defendant Sunbury. (Id. ¶ 9-10.) According to Plaintiff, he was replaced by part-time personnel under the age of forty (40), "namely, Keifer

---

[2] The following factual background is taken from the allegations of Plaintiff's first amended complaint. (Doc. No. 15.)

[3] In connection with Defendants' motion to dismiss (Doc. No. 16), Defendants filed a motion to take judicial notice (Doc. No. 17), through which Defendants move for the Court to take judicial notice of an arbitration opinion and award (Doc. No. 17 at 1-2). This arbitration opinion and award, attached as exhibit A to the pending motion to take judicial notice, indicates that Defendant Sunbury and the Sunbury Police Officers Association ("SPOA") participated in an arbitration related to Plaintiff's termination on February 2, 2017, and that an opinion and award was issued on April 21, 2017. (Doc. No. 17 at 8-31.) Because the Court concludes that it would be inappropriate at this stage in the proceedings to take judicial notice of the arbitration opinion and award, the Court will not address the substance of this submission.

Bathgate, a person in his 20s, and Officer (first name unknown) Vognetz, a person in his 30s." (Id. ¶ 14.)

Plaintiff avers that in January 2014, he was elected president of the SPOA, a collective bargaining unit that represents law enforcement officers employed by Defendant Sunbury, and served as its president until he was terminated in 2016. (Id. ¶¶ 18-20.) In his role as president of the SPOA, Plaintiff was responsible for negotiating a collective bargaining agreement ("CBA") with Defendant Sunbury. (Id. ¶ 21.) In 2013, the SPOA and Defendant Sunbury agreed to a CBA under which officers with service of twenty (20) or more years would receive certain longevity bonuses and other benefits. (Id. ¶ 22.)

In 2015, the SPOA and Defendant Sunbury began negotiating a new CBA. (Id. ¶ 24.) Defendant Persing, as mayor of Sunbury, negotiated the new CBA on behalf of Defendant Sunbury. (Id. ¶ 25.) Plaintiff alleges that, during the negotiations for the new CBA, Defendant Persing "and other representatives of [Defendant] Sunbury" expressed a desire to eliminate the longevity bonuses and other benefits that had been included in the previous CBA. (Id. ¶ 26.) According to Plaintiff, Defendant Persing complained publicly that the benefits at issue were too costly and were putting Defendant Sunbury in financial jeopardy. (Id. ¶ 27.) Plaintiff states that the SPOA opposed the elimination of the longevity bonuses and other benefits. (Id. ¶ 28.) The SPOA and Defendant Sunbury proceeded to binding arbitration to resolve their impasse as to the longevity bonuses and other benefits, and an arbitration hearing took place before a private arbitrator on June 1, 2016. (Id. ¶ 29.)

Plaintiff avers that, subsequent to the June 1, 2016 arbitration hearing, Defendants "embarked on a policy and course of conduct to terminate, harass and intimidate every bargaining unit member over the age of 40." (Id. ¶ 30.) Plaintiff was terminated on September

1, 2016. (Id. ¶ 12.) Plaintiff alleges that Defendants retaliated against Plaintiff for his association with the SPOA and that Defendants interfered with his exercise of his First Amendment right to freedom of association as a member of the SPOA. (Id. ¶¶ 31-32.) Plaintiff avers that as a result of Defendants' acts, he has suffered lost earnings and benefits, humiliation, and emotional distress. (Id. ¶¶ 16, 33.)

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions set forth as factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly

4

dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## III. DISCUSSION

As noted, supra, Defendants have filed both a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 16) and a motion to take judicial notice of an arbitration opinion and award (Doc. No. 17). The Court will first address Defendants' motion to take judicial notice.

### A. Defendants' Motion to Take Judicial Notice

#### 1. Applicable Legal Standard

Federal Rule of Evidence 201(b) permits a district court to take judicial notice of facts that are "generally known within the territorial jurisdiction of the trial court," or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b). The Third Circuit has held that judicial notice "should be done sparingly at the pleadings stage." See Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007). In the context of an arbitration award, judicial notice is appropriate where a plaintiff includes references to the arbitration award in a complaint, even where the plaintiff has failed to attach the arbitration award to the complaint. See Brody v. Hankin, 145 F. App'x 768, 772 (3d Cir. 2005) (holding that the district court impermissibly noticed the existence of an arbitration award because the plaintiff did not rely on the award in the complaint). Further, at the motion to dismiss stage, when a court takes judicial notice of an arbitration award, it may do so only as to

5

the existence of the arbitration award, and not with respect to the substance of the award. See id. at 772-73.

### 2. Arguments of the Parties

In support of their motion to take judicial notice, Defendants argue that "[w]here the defenses of res judicata or collateral estoppel are raised for adjudication on a motion to dismiss, the Court can take notice of all facts necessary for the decision and adjudicate that defense." (Doc. No. 17 at 4) (citing Toscano v. Conn. Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008)). Defendants acknowledge that even when a court can take judicial notice of the existence of an arbitration award, a court cannot typically take notice of the facts contained therein, but argue that the Court may do so in this case because "the arbitration award is integral to Plaintiff's FAC" and Plaintiff, therefore, "opened the door to consideration of the arbitration opinion and its factual content by referencing his 'one instance of discipline,' his 'satisfactory performance,' his 'wrongful termination' and that his employment was terminated based on his age." (Id. at 6.) In opposition, Plaintiff argues that taking judicial notice of the arbitration award is unwarranted because he has not referenced the arbitration award in his complaint. (Doc. No. 19 at 2.) Furthermore, Plaintiff maintains that none of the factual averments added to his amended complaint implicate the arbitration award and refers to the Court's prior ruling on the matter. (Id.) Plaintiff requests that the Court again decline to take judicial notice of the arbitration award at the pleading stage. (Id.)

### 3. Whether Defendants' Motion to Take Judicial Notice Should Be Granted

As a threshold matter, the Court notes that it thoroughly considered Defendants' arguments in support of their motion to take judicial notice in its prior ruling declining to take judicial notice of the arbitration award. (Doc. No. 13 at 6-9.) Defendants' most recent motion

6

(Doc. No. 17), however, fails to address the Court's analysis of the matter and, instead, recites arguments nearly identical to those raised to the Court previously (Doc. No. 7). Indeed, Defendants' only new argument is that the arbitration award is "integral" to Plaintiff's complaint. (Doc. No. 17 at 6.) This argument does not persuade the Court to alter its earlier analysis.[4] Plaintiff does not reference the arbitration decision at issue in his amended complaint, nor is there anything in the record to suggest that Plaintiff's claims under the ADEA and First Amendment would not exist but for the existence of the arbitration decision. See Dix v. Total Petrochemicals USA, Inc., No. 10-cv-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) ("The rule [permitting judicial notice of integral documents] is applied when the claim would not exist but-for the existence of the document.") (collecting cases). Therefore, the Court finds the arbitration decision does not rise to the level of an integral document and once more declines to take judicial notice of the award. Accordingly, Defendants' motion to take judicial notice (Doc. No. 17) is denied.[5] The Court will next consider Defendants' motion to dismiss.

---

[4] Defendants cite two cases in support of their position, Spector Gadon & Rosen, P.C. v. Fishman, Nos. 13-2691, 13-5198, 2015 WL 1455692 (E.D. Pa. Mar. 31, 2015), and Dix v. Total Petrochemicals USA, Inc., No. 10-cv-3196, 2011 WL 2474215 (D.N.J. June 20, 2011). However, not only do these cases fail to support Defendants' contention that the Court should take judicial notice of the arbitration award here, they lend support to the Court's conclusion that judicial notice is inappropriate on the facts at hand. In Spector, the arbitration decision at issue made findings that formed the basis of the plaintiff's legal malpractice claim against his former attorney and the plaintiff explicitly referenced the arbitration decision in his complaint. See Spector, 2015 WL 1455692, at *7. In Dix, the court declined to take judicial notice of the document at issue, explicitly stating that, "[i]t is not enough that a putatively integral document be critical for an affirmative defense, or bear on an essential element of the claim. The rule [permitting judicial notice of integral documents] is applied when the claim would not exist but-for the existence of the document." See Dix, 2011 WL 2474215, at *1 (collecting cases).

[5] In support of their motion to dismiss (Doc. No. 16), Defendants also reassert the affirmative defense that Plaintiff's claims are barred by the doctrine of collateral estoppel based on the findings in the arbitration decision that is the subject of Defendants' motion to take judicial notice. (Id. at 3-6). The Court addressed this argument in its previous ruling dismissing Plaintiff's first complaint. (Doc. No. 13 at 9-11). Because Defendants have similarly failed to engage with the Court's assessment of that argument in briefing the matter again, the Court will

7

### B. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In light of the Court's determination that it will not undertake a collateral estoppel analysis at this stage because it will not take judicial notice of the arbitration award, the Court will proceed in evaluating the sufficiency of Count I of Plaintiff's complaint pursuant to Rule 12(b)(6).

#### 1. Count I - Age Discrimination in Violation of the ADEA

##### i. Applicable Legal Standard

The ADEA prohibits discrimination by employers on the basis of age. See 29 U.S.C. § 623(a)(1). In the Third Circuit, the elements of a prima facie case for age discrimination under the ADEA are that:

> (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.

Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citing Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013)). Where a plaintiff is not directly replaced, the fourth element is also satisfied if the plaintiff can establish he was treated less favorably than "similarly situated, younger employees." See Popko v. Penn State Milton S. Hershey Med. Ctr., No. 1:13-cv-01845, 2014 WL 3508077, at *7 (M.D. Pa. July 14, 2014) (citing Monaco v. Am. Gen. Assurance Co., 359 F. 3d 296, 300 (3d Cir. 2004)). To survive a motion to dismiss in an employment discrimination context, a complaint must present factual allegations that would

---

not write separately to repeat its full analysis. Instead, the Court merely reasserts its decision that, even if it were to take judicial notice of the arbitration opinion, it would be inappropriate at the motion to dismiss stage for it to analyze the substance of the opinion. (Doc. No. 13 at 10) (citing Brody, 145 F. App'x at 772-73). Therefore, the Court once more declines to evaluate whether Plaintiff's claims are barred by collateral estoppel.

"raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the prima facie case. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### ii. Arguments of the Parties

In support of their motion to dismiss, Defendants argue that Plaintiff's amended complaint fails to correct the deficiencies identified by the Court in its prior ruling. (Doc. No. 16 at 6.) Specifically, Defendants note that "[a]t no point in Plaintiff's FAC does he allege that he was over the age of 40 at the time of his termination" and argue that Plaintiff's allegation that he was replaced by younger individuals remains insufficient to support an inference of age discrimination. (Id. at 6-7.) By contrast, Plaintiff argues that he has corrected the deficiencies identified by the Court by including allegations pertinent to his qualifications as a police officer and by generally alleging the ages of his replacements. (Doc. No. 19 at 5.)

### iii. Whether Plaintiff Has Stated a Claim Under the ADEA

Plaintiff's first amended complaint includes the following allegations relevant to his discrimination claim brought under the ADEA:

> At all relevant times herein, [Plaintiff] was qualified to be employed as a law enforcement officer by [Defendant] Sunbury's police department as [Plaintiff] maintained the certifications required by Pennsylvania Act 120 and, in addition, had completed the certifications and training describe[d] by the documents attached hereto as Exhibit 1.
>
> [Plaintiff], prior to his termination from employment, had only one instance of discipline in thirteen years of service with [Defendant] Sunbury's police department. [Plaintiff] received satisfactory performance evaluations and received the commendations attached hereto as Exhibit 2.
>
> [Defendant] Sunbury has engaged in a course of conduct designed to intimidate all of its law enforcement officers over the age of 40.
>
> The purpose of [Defendant] Sunbury's course of conduct designed to intimidate all of its law enforcement officers over the age of 40 is to effect the severance of all law enforcement officers from employment with [Defendant] Sunbury.

9

> [Defendant] Sunbury has created and continues to create a hostile work environment for law enforcement officers over the age of 40.
>
> On September 1, 2016, [Defendant] Sunbury terminated [Plaintiff's] employment as a law enforcement officer.
>
> [Defendant] Sunbury terminated [Plaintiff's] employment as a law enforcement officer based on [Plaintiff's age].
>
> [Defendant] Sunbury replaced [Plaintiff] by hiring part-time personnel under the age of 40, namely, Keifer Bathgate, a person in his 20s, and Officer (first name unknown) Vognetz, a person in his 30s.
>
> The conduct of [Defendant] Sunbury in creating a hostile work environment based on age and terminating [Plaintiff] based on his age violates the [ADEA].
>
> As a direct and proximate result of [Defendant] Sunbury's acts, [Plaintiff] has suffered lost earnings and benefits, humiliation and emotional distress.

(Doc. No. 15 ¶¶ 7-16.)

In the Court's Memorandum addressing Defendants' first motion to dismiss (Doc. No. 8), it determined that Plaintiff failed to allege sufficient facts in support of the second and fourth elements of an ADEA discrimination claim (Doc. No. 13 at 13-15). In an effort to correct the deficiencies identified by the Court as to the second element of an ADEA discrimination claim, that Plaintiff was qualified for the position and maintained satisfactory performance up to the time of his termination, Plaintiff's first amended complaint includes allegations that he was qualified for his position and received satisfactory performance evaluations and commendations. (Doc. No. 15 ¶¶ 7-8.) Defendants do not argue that these additional allegations are insufficient to plead the second element of an age discrimination claim. (Doc. No. 16 at 6-7.) Therefore, the Court turns to Defendants' arguments that Plaintiff has failed to allege the first and fourth elements of an ADEA discrimination claim.

In its prior Memorandum, the Court acknowledged that Plaintiff had not expressly alleged that he was at least forty years old in his initial complaint. (Doc. No. 13 at 13.)

Plaintiff's amended complaint does not attempt to clarify his age. Instead, Plaintiff assumes the Court will again infer Plaintiff's general age from a reading of the complaint as a whole. (Doc. No. 19 at 5.) However, even if the Court were to read the amended complaint to sufficiently allege that Plaintiff is over forty years old, the lack of specificity precludes the Court from making a determination in Plaintiff's favor as to the fourth element of an ADEA discrimination claim. As noted, the fourth element of an ADEA discrimination claim requires that a plaintiff allege that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. See Willis, 808 F.3d at 644. There is no particular age difference that must be shown for a court to make a determination that a replacement is sufficiently younger. See Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (citing Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1985)).

 Here, Plaintiff asserts that Defendant Sunbury replaced him "by hiring part-time personnel under the age of 40, namely, Keifer Bathgate, a person in his 20s, and Officer (first name unknown) Vognetz, a person in his 30s." (Doc. No. 15 ¶ 14.) However, absent more specific details about Plaintiff's own age and the age of his replacements, the Court cannot conclude the age differences between Plaintiff's alleged replacements and Plaintiff himself are so great as to support an inference of discriminatory motive. Additionally, as noted in the Court's prior Memorandum, other courts have found bare assertions that a plaintiff was replaced by a younger employee, absent any other facts in a complaint to suggest discriminatory motive, to be insufficient to state a claim for relief under the ADEA. See Foster v. Humane Soc. of Rochester & Monroe Cty., Inc., 724 F. Supp. 2d 382 at 391 (W.D.N.Y. 2010) (holding that the plaintiff's allegation that she was "replaced by a woman in her early thirties" was insufficient to state a claim for relief under the ADEA). Notably, at least one court has remarked that, "[i]f [such bare allegations were sufficient to state a claim under the ADEA], then any time an ADEA-covered

employer terminated an employee over age forty, the employer would be unable to replace that employee with someone younger, without exposing itself to potential liability for age discrimination." See id. In the case at bar, Plaintiff has made no other factual allegations, beyond conclusory statements, that suggest age discrimination played a role in his termination. Accordingly, the Court determines Plaintiff's amended complaint has failed to allege sufficient factual matter to make an ADEA discrimination claim facially plausible under Iqbal. See Iqbal, 556 U.S. at 678. Therefore, the Court will grant Defendants' motion as to Count I of Plaintiff's amended complaint and dismiss Plaintiff's age discrimination claim with prejudice.[6]

---

[6] The Third Circuit has held that where a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). An amendment is futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). In this case, Plaintiff has already been granted leave to amend his complaint to correct pleading deficiencies identified by the Court. Nonetheless, Plaintiff's amended complaint has failed to correct those deficiencies. It is well-established that dismissal without leave to amend is appropriate where a plaintiff has notice of deficiencies and fails to correct them in a first amended complaint. See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) (finding that a district court did not abuse its discretion in denying leave to amend for a second time where the plaintiff was on notice of the deficiencies in his complaint and failed to correct them in the first amended complaint). Therefore, the Court determines that allowing Plaintiff leave to amend his complaint for a second time would be futile.

## 2. Count II - Interference with Plaintiff's First Amendment Freedom of Association[7]

### i. Applicable Legal Standards

#### a. First Amendment Interference

The Supreme Court has held that the Free Speech Clause of the First Amendment gives rise to an attendant right to associate for the purpose of engaging in collective expression. See Boy Scouts of Am. v. Dale, 530 U.S. 640, 661 (2000). Regarding this right to associate, the Supreme Court has recognized two forms of protected relationships: "those involving expressive association and those involving intimate association." A.B. v. Montgomery Area Sch. Dist., No. 4:10-cv-484, 2012 WL 3288113, at *4 (M.D. Pa. Aug. 10, 2012) (citing Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 442 (3d Cir. 2000)). In evaluating a claim of interference with expressive association rights, a court must consider: (1) whether the group making the claim engaged in expressive association; (2) whether the state action at issue significantly affected the group's ability to advocate its viewpoints; and (3) whether the state interest at issue justified the burden placed on the right. See Pi Lambda Phi, 229 F.3d at 442.

#### b. First Amendment Retaliation

In order to plead a retaliation claim under the First Amendment, a plaintiff must allege facts in support of the following elements: (1) constitutionally protected conduct, (2) retaliatory

---

[7] Plaintiff's Count II is described as "COUNT II—FREEDOM OF ASSOCIATION—42 U.S.C.A. § 1983." (Doc. No. 15.) In briefing on the pending motions, Plaintiff describes the claim as "a claim for interference with plaintiff's right to freedom of association." (Doc. No. 19 at 6.) Defendants' briefing addresses this claim as a claim for interference with a First Amendment right to expressive association. (Doc. No. 16 at 7-8.) However, Plaintiff also cites a standard for evaluating retaliation claims under the First Amendment. (Doc. No. 19 at 6.) It is, therefore, unclear whether Plaintiff is attempting to state a claim for interference with First Amendment rights or retaliation for engaging in protected activity under the First Amendment. Consequently, the Court will address both potential claims.

action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. See Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). In order to establish the necessary causal link, a plaintiff must generally show: "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." See Carroll v. Clifford Twp., No. 3:12-0553, 2012 WL 3288084, at *4 (M.D. Pa. Aug. 10, 2012) (citing DeFranco v. Wolfe, 387 F. App'x 147, 155 (3d Cir. 2010)) "[A] protected activity and a retaliatory action must be 'very close' in time to prove causation." Id. at *5 (citing Conklin v. Warrington Twp., No. 1:06-cv-2245, 2008 WL 2704629, at *12 (M.D. Pa. July 7, 2008)).

### ii. Arguments of the Parties

In support of their motion to dismiss, Defendants argue that Plaintiff's amended complaint lacks sufficient factual allegations to permit an inference of interference with his First Amendment rights to expressive association. Specifically, Defendants note that Plaintiff's amended complaint does not include any allegations "relating to the expressive association engaged in by the SPOA, [or] how the Defendants' actions affected the group's ability to advocate its viewpoints" and that the amended complaint "is bare of any allegations as to how Defendant[s] retaliated against Plaintiff, how Defendants harassed and intimidated Plaintiff, or how Defendant[s] interfered with Plaintiff's right to expressive association." (Doc. No. 16 at 7-8.) In opposition, Plaintiff argues that he "has made the allegations of fact at paragraph 30 A-F of his First Amended Complaint" and "suggests that these allegations are sufficient to support an inference of interference [with his First Amendment rights]." (Doc. No. 19 at 7.)

14

### iii. Whether Plaintiff Has Stated a Claim Under the First Amendment

Upon review of the record in accordance with the governing law, the Court concludes that Plaintiff's complaint lacks sufficient factual matter to support a reasonable inference that Defendants violated Plaintiff's First Amendment right to freedom of association. Count II of Plaintiff's complaint contains the following conclusory allegations:

> Subsequent to the June 1, 2016 arbitration hearing, [Defendants] embarked on a policy and course of conduct to terminate, harass[,] and intimidate every bargaining unit member over the age of [forty], including [Plaintiff], entitled to receive longevity, DROP program[,] and other benefits related to time in service. More specifically, Defendants engaged in the following acts:
>
> A. Defendants wrongfully threatened officer S.M., [a] person over the age of 40 and an officer of the bargaining unit, with termination.
>
> B. Defendants wrongfully sought criminal prosecution of officer J.Q.[,] a person over the age of 40 and an officer of the bargaining unit with prosecution for theft of property.
>
> C. Defendants wrongfully terminated Plaintiff.
>
> D. Defendants wrongfully threatened officer V.P., a person over the age of 40 and a member of the bargaining unit, with termination and criminal prosecution for dispensing ammunition [to] new employees for weapons practice consistent with accepted department procedures.
>
> E. Defendants forced, without cause or justification, Sgt. T., a person over the age of 40 and a member of the bargaining unit, to undergo a physical examination ostensibly to determine his fitness for duty.
>
> F. Defendants forced all members of the bargaining unit over 40 [to] work in excess of the bargained 12 hour schedule, mandated overtime, and required officers to work solo shifts, all of which placed officers at risk[.]
>
> [Defendants] have retaliated against [Plaintiff] and others for their association with the SPOA.
>
> [Defendants] have interfered with [Plaintiff's] exercise of his rights as a member of the SPOA in violation of the association clause of the First Amendment to the Constitution of the United States.

> As a direct and proximate result of [Defendants'] acts, [Plaintiff] has suffered lost earning and benefits, humiliation and emotional distress.

(Doc. No. 15 ¶¶ 30-33.)

This Court previously determined that Plaintiff failed to allege sufficient facts to support a reasonable inference that Defendants violated his right to freedom of association. (Doc. No. 13 at 16.) Plaintiff acknowledges that the only additional factual averments in his amended complaint intended to support a First Amendment claim are those listed "at paragraph 30 A-F," which have been noted above. (Doc. No. 19 at 7.) These additional allegations, however, are insufficient to state a claim for violation of Plaintiff's First Amendment rights. Plaintiff's amended complaint continues to lack any factual allegations that would inform the Court as to how Defendants harassed and intimidated Plaintiff, prevented Plaintiff or others from advocating on behalf of SPOA, or otherwise interfered with Plaintiff's First Amendment right to expressive association. Indeed, the only averments specific to Plaintiff are the wholly conclusory statements that, "Defendants wrongfully terminated Plaintiff" (Doc. No. 15 ¶ 30(c)), "[Defendants] have retaliated against [Plaintiff] and others for their association with the SPOA" (id. ¶ 31), and "[Defendants] have interfered with [Plaintiff]'s exercise of his rights . . . in violation of the association clause of the First Amendment" (id. ¶ 32). Accordingly, the Court concludes that Plaintiff's amended complaint has failed to allege sufficient factual matter to state a claim of interference with his First Amendment rights.

Insofar as Plaintiff has attempted to allege a retaliation claim, as noted above, where a complaint seeks to state a claim for retaliation under the First Amendment, a plaintiff must allege "a causal link between the constitutionally protected conduct and the retaliatory action." See Thomas, 463 F.3d at 296. The key to establishing such a link is generally a temporal connection

between the protected conduct at issue and the alleged retaliation. See Carroll, 2012 WL 3288084, at *4 (citing DeFranco, 387 F. App'x at 155). Here, Plaintiff has not alleged facts in support of a causal link between Defendants' actions and any protected First Amendment activity. Plaintiff appears to indicate that the June 1, 2016 arbitration hearing regarding collective bargaining rights was the starting point for Defendants' alleged retaliation. (Doc. No. 15 ¶ 30.) However, Plaintiff was not terminated until September 1, 2016, approximately three months later. (Id. ¶ 12.) Other courts have not found similar lengths of time sufficient to suggest causation for retaliation purposes. See DeFranco, 387 F. App'x. at 155 (noting that a difference of approximately three months between the protected conduct and alleged retaliatory action was not sufficiently close in time as to be "unusually suggestive" of retaliation); see also Conklin, 2008 WL 2704629, at *12 (dismissing a First Amendment retaliation claim because a two month period between the protected activity and alleged retaliatory action was not suggestive of causation). Accordingly, the Court will grant Defendants' motion to dismiss as to Count II of Plaintiff's complaint and dismiss Plaintiff's First Amendment claim with prejudice.[8]

---

[8] Consistent with the Court's discussion, supra, of the propriety of amendment with regard to Count I of Plaintiff's complaint, the Court finds that, where Plaintiff was on notice of the deficiencies in Count II of his complaint and failed to correct those deficiencies in his amended complaint, allowing Plaintiff leave to amend his complaint for a second time would be futile. See Krantz, 305 F.3d at 144. Therefore, the Court will dismiss Plaintiff's amended complaint in its entirety with prejudice.

In addition, Defendants put forth additional arguments that: (1) Defendant Persing is entitled to qualified immunity (Doc. No. 16 at 8-10); (2) Plaintiff is not entitled to punitive damages or compensatory damages for pain and suffering (id. at 10-11); and (3) that arbitration is the appropriate forum for Plaintiff's claims (id. at 11-12). The Court notes that Plaintiff concedes that he is not entitled to punitive damages against Defendant Sunbury and withdraws that claim. (Doc. No. 19 at 8.) Because the Court has dismissed Count II of Plaintiff's amended complaint, the only claim against Defendant Persing, the Court will not separately take up Defendants' argument that Defendant Persing is entitled to qualified immunity. In light of the Court's dismissal of Plaintiff's amended complaint in its entirety, Defendants' other arguments are moot.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to take judicial notice (Doc. No. 17), grant Defendants' motion to dismiss (Doc. No. 16), and dismiss Plaintiff's amended complaint with prejudice. An Order consistent with this Memorandum follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania